**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ESTATE OF CLEMENTE NAJERA AGUIRRE; J.S.; A.S.; Y.S., | No. 23-55718 |
| *Plaintiffs-Appellees*, | D.C. No. 5:18-cv-00762-DMG-SP |
| v. | |
| COUNTY OF RIVERSIDE; DAN PONDER, | OPINION |
| *Defendants-Appellants*. | |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted September 17, 2024
Seattle, Washington

Filed March 11, 2025

Before: M. Margaret McKeown, Ronald M. Gould, Circuit Judges, and Jane A. Restani[*], Judge.

Opinion by Judge McKeown

---

[*] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

## SUMMARY[**]

### Excessive Force

The panel affirmed the district court's order denying Riverside County Sergeant Dan Ponder's renewed motion, following a jury verdict, for judgment as a matter of law based on qualified immunity in a 42 U.S.C. § 1983 action alleging that Ponder used excessive force when he shot and killed Clemente Najera-Aguirre.

Ponder arrived at the scene after responding to a call about someone destroying property with a bat or club-like object. He commanded Najera, who matched the suspect description, to drop the bat he was holding. Najera refused and approached Ponder. When he was approximately 10-15 feet away, Ponder pepper sprayed Najera twice, but the pepper spray blew away and was ineffective. Ponder then fired six shots in three successive volleys. An autopsy suggested Najera was turned away when he was struck by the final two bullets, which were the fatal shots. Following a five-day trial, a jury returned a verdict for plaintiffs and awarded $10 million in damages.

The panel first held that Ponder did not waive his qualified immunity defense. His post-judgment claim to qualified immunity, made in his motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), was based on the same underlying factual arguments

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

regarding the reasonableness of his use of force raised in his Rule 50(a) motion at the conclusion of trial.

The panel held that Ponder was not entitled to qualified immunity on the merits. The jury unanimously found for plaintiffs on their claim for excessive force in violation of the Fourth Amendment. Drawing all inferences in favor of plaintiffs, the facts at trial showed that Ponder violated clearly established law that deadly force is not justified where the suspect poses no immediate threat. The evidence demonstrated that Najera was not an immediate threat to Ponder or to others.

## COUNSEL

Dale K. Galipo (argued) and Hang D. Le, Law Offices of Dale K. Galipo, Woodland Hills, California; Ian A. Cuthbertson and Christian F. Pereira, Briana Kim PC, Long Beach, California; for Plaintiffs-Appellees.

Lann G. McIntyre (argued) and Daniel R. Velladao, Lewis Brisbois Bisgaard & Smith LLP, San Diego, California; Tony M. Sain (argued) and Abigail J.R. McLaughlin, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California; for Defendants-Appellants.

## OPINION

McKEOWN, Circuit Judge:

It is well settled that deadly force is not justified "[w]here the suspect poses no immediate threat to the officer and no threat to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Here, Sergeant Dan Ponder shot at Clemente Najera-Aguirre ("Najera") six times without warning and killed him. The fatal shots, that struck Najera in the back, were fired when he was turned away from the officer. As we wrote in the first appeal in this case, in which we affirmed the district court's denial of qualified immunity on summary judgment, "[i]n dispute is the level of threat Najera posed immediately before he died. That quintessential question of fact is reserved for the jury . . . ." *Estate of Aguirre v. Cnty. of Riverside* ("*Aguirre I*"), 29 F.4th 624, 626 (9th Cir. 2022).

The jury has now spoken. After a five-day trial, the jury unanimously found Ponder liable under Section 1983 for excessive force in violation of the Fourth Amendment and awarded $10 million in compensatory damages. The district court denied qualified immunity as raised in a renewed motion for judgment as a matter of law. We affirm.

## Factual Background

On April 15, 2016, Sergeant Dan Ponder of the Riverside County Sheriff's Department responded to a call in Lake Elsinore, California, about someone destroying property with a bat or club-like object. When he arrived on scene, Ponder observed that Najera, who was standing in the driveway of a house near the sidewalk, matched the suspect description. Ponder also noticed shattered glass around the

house and people standing approximately 15–20 feet from Najera.

Ponder began issuing commands for Najera to drop the bat—which an eyewitness testified was resting on Najera's shoulders—and get on the ground; Najera turned his attention to Ponder but did not comply with his instructions. Najera then exited the gate of the house and moved toward the street where Ponder stood. Despite Ponder's repeated orders, Najera did not drop the bat.

When Najera was approximately 10–15 feet away, Ponder pepper sprayed Najera twice, but the pepper spray blew away and was ineffective. Najera then turned toward Ponder, still holding the bat. Ponder and Najera stood face-to-face, where they remained roughly 10–15 feet apart, with Ponder now pointing his gun at Najera.

Within seconds of facing each other, Ponder began shooting Najera without warning. Ponder fired six shots. Ponder fired the shots in two volleys; there was a pause between five and thirty seconds between Ponder's initial shots and the next round of shots that took Najera down. Witnesses stated that Najera collapsed face down—falling "like a tree" where he had been shot—with his feet closer to and his head farther from Ponder. Najera was killed. His body was found on the sidewalk approximately ten feet from where Ponder had been standing.

An autopsy showed that four bullets struck Najera: one in the right upper chest, one in the left elbow, and two in the back, which were the fatal shots. The bullet paths of the shot to the elbow and the two fatal shots to the back suggested Najera was turned away, with his back to Ponder, when he was struck.

## Procedural Background

Najera's children ("the Najeras") sued Ponder and his employer, Riverside County, under 42 U.S.C. § 1983, alleging that Ponder violated Najera's Fourth and Fourteenth Amendment rights. Ponder and Riverside County moved for summary judgment. The district court granted summary judgment on all claims except for the Fourth Amendment claim against Ponder, thus denying him qualified immunity. Ponder sought reversal of the district court but we affirmed on interlocutory appeal. *Aguirre I*, 29 F.4th at 624. We held that it was clearly established law that killing a suspect who poses no immediate threat to an officer or others violates the suspect's Fourth Amendment rights. *Id.* at 626. Because factual disputes remained as to "the level of threat Najera posed immediately before his death," that dispute needed to go to the jury, thus precluding summary judgment. *Id.* at 628.

After a five-day trial in which multiple eyewitnesses and expert witnesses testified, the district court denied Ponder's motion for judgment as a matter of law ("JMOL") brought under Federal Rule of Civil Procedure 50(a) regarding sufficiency of the evidence. The jury returned a verdict in one day, finding for the Najeras and awarding $10 million in damages.

After the entry of judgment following trial, Ponder filed a renewed motion for JMOL under Federal Rule of Civil Procedure 50(b) in which he also argued that he was entitled to qualified immunity. The district court denied Ponder's Rule 50(b) motion on the merits. We review Ponder's timely appeal of that decision.

ESTATE OF NAJERA-AGUIRRE V. CITY OF RIVERSIDE 7

## Analysis

### I. Qualified Immunity Was Not Waived

The Najeras contend that Ponder waived his qualified immunity defense. In his Rule 50(a) motion, Ponder argued that the Najeras "failed to present any evidence that [his] actions . . . constituted excessive" force. Ponder repeated this argument in his Rule 50(b) motion but added that, even if there were sufficient evidence, he "was entitled to qualified immunity based on" the trial evidence as it was not "clearly established" at the time of the incident that Ponder's conduct violated Najera's Fourth Amendment rights. The Najeras argue that Ponder waived the qualified immunity defense by failing to raise it explicitly in his Rule 50(a) motion, while Ponder claims that his Rule 50(a) motion avoided waiver by addressing "the essential underpinnings of a qualified immunity defense."

In *Tan Lam v. City of Los Banos*, 976 F.3d 986, 997 n.4 (9th Cir. 2020), we rejected the plaintiff's contention that the defendant "waived the issue of qualified immunity by failing to raise it in his 50(a) motion" where the "factual arguments" made in support of that motion were the same as those underlying the "asserted claim to qualified immunity" made in the defendant's Rule 50(b) motion. So too here. Ponder's claim to qualified immunity made in his Rule 50(b) motion was based on the same underlying factual arguments regarding the reasonableness of his use of force raised in his Rule 50(a) motion. Ponder did not waive his qualified immunity defense.

This outcome is further supported by *Dupree v. Younger*, 598 U.S. 729 (2023). In *Dupree*, the Supreme Court held that "[w]hile factual issues addressed in summary-judgment denials are unreviewable on appeal . . . a post-trial motion

under Rule 50 is not required to preserve for appellate review a purely legal issue resolved at summary judgment." *Id.* at 735–36. We have held "that the 'clearly established' prong of the qualified immunity analysis is a matter of law to be decided by a judge." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018) (quoting *Morales v. Fry*, 873 F.3d 817, 824–25 (9th Cir. 2017)). As Ponder's Rule 50(b) motion added an argument only as to the clearly established prong of qualified immunity, he did not need to preserve that purely legal issue, which had been expressly raised at summary judgment.

### II. Qualified Immunity Was Properly Denied

Although we review de novo the district court's denial of qualified immunity as raised in a renewed motion for JMOL, we "give significant deference to the jury's verdict and to the nonmoving parties (here, Plaintiffs) when deciding whether that decision was correct." *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013). We "draw all reasonable inferences in" the nonmoving party's favor, *Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006), and we "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). This is a highly deferential standard.

Ponder is not entitled to qualified immunity on the merits. The jury unanimously found for the Najeras on their "section 1983 claim for excessive force in violation of the Fourth Amendment." Drawing all inferences in favor of the Najeras, the facts at trial show Ponder violated clearly established law that holds deadly force is not justified where the suspect poses no immediate threat. *See Garner*, 471 U.S. at 11.

### A. Constitutional Violation

A police officer "will receive qualified immunity from suit under 42 U.S.C. § 1983 . . . if the plaintiff has not 'alleged' or 'shown' facts that would make out a constitutional violation," or a violation is shown but "the constitutional right allegedly violated was not 'clearly established' at the time of defendant's alleged misconduct." *A.D.*, 712 F.3d at 450, 453–54 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). When, as here, "a jury has found (with reasonable support in the evidence)" a constitutional violation by a police officer, we view the jury's verdict as "sufficient to deny him qualified immunity" on the first prong of the analysis. *Id.* at 450, 456; *see also Reese*, 888 F.3d at 1037. The jury's finding in favor of the Najeras establishes that Ponder violated Najera's Fourth Amendment right to be free from excessive force.

### B. Clearly Established Law

Assessing qualified immunity after a jury verdict turns on the second, "clearly established" prong, which requires deference to the jury's view of the facts. *See A.D.*, 712 F.3d at 456. "Conduct violates a clearly established right if the unlawfulness of the action in question [is] apparent in light of some pre-existing law." *Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022) (alteration in original) (internal quotations omitted).

As we held on interlocutory appeal, caselaw from this circuit and the Supreme Court, published before the incident, clearly establishes that "[d]eadly force is not justified '[w]here the suspect poses no immediate threat to the officer and no threat to others.'" *Aguirre I*, 29 F.4th at 629 (quoting *Garner*, 471 U.S. at 11).

1. Threat to Officer

The trial evidence demonstrated that Najera was not an immediate threat to Ponder justifying the use of deadly force, especially given several cases with decidedly analogous facts in our circuit. Our precedent clearly establishes the illegality of Ponder's actions. We have held that police used excessive force when officers, "without warning," "shot and killed" an individual who was holding a knife but not threatening the deputies and standing "roughly six to eight feet away" from them. *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1227–28, 1235 (9th Cir. 2013). That use of deadly force was unreasonable because the evidence did not "clearly establish that Hayes was threatening the deputies with the knife" because he was "walking towards the deputies . . . not 'charging' at them" and "was not . . . attempting to evade" arrest. *Id.* at 1233 & n.4, 1234. When we view the facts at trial in the light most favorable to the Najeras and defer to the jury's verdict, *Hayes* is highly analogous and put Ponder on notice that his actions would violate Najera's rights.

Though there was conflicting testimony regarding the period before Ponder's first volley of shots, Ponder was the only eyewitness to the moments immediately before his second volley of shots at Najera. And while Ponder testified that Najera posed a threat, the jury had good reason to doubt his testimony. Again and again, Ponder's credibility was challenged at trial. For example, Ponder claimed he was aware when responding to the call that the suspect had threatened a woman and her baby, but that information was not audibly broadcast over the dispatch radio. Ponder was recalled and impeached concerning his knowledge before arriving on scene, and the district court judge issued a curative instruction to the jury on this issue. Ponder also

claimed that Najera charged him, but the trajectory of the shot to Najera's chest suggested he was not tilted or canted forward at the time the first bullet struck but rather was "virtually straight up and down." This suggested a slower advance akin to Hayes "walking towards the deputies." *Id.* at 1233.

Further, in his own statement made the night of the shooting, Ponder reported he "fired three times, and [] moved to the left" and that Najera "kind of turned, like, away from me momentarily." Ponder's acknowledgment that Najera turned away from him—especially coupled with eyewitness testimony that Ponder paused for as long as thirty seconds between volleys of shots and forensic evidence that bullets struck Najera while he was facing away—could lead the jury to determine that Najera did not pose a threat right before Ponder shot him and underscores why we give deference to the jury's view of the facts. *See A.D.*, 712 F.3d at 456. Ponder's own police practices expert agreed that "[t]here were two shots that struck Mr. Najera in the back," and at one point Ponder "believed that Mr. Najera momentarily [] faced away, turned away, stopped advancing."

Witnesses also testified that Najera was over ten feet from Ponder when Ponder opened fire, and Najera fell where he stood (rather than stumbling several feet further backward after being shot, as Ponder had claimed). Ponder himself estimated Najera was ten feet away at the time of the shots. Najera was several feet further away from Ponder than Hayes was from the deputies who were denied qualified immunity. *Hayes*, 736 F.3d at 1227–28. This factual scenario also undercuts Ponder's attempted reliance on *Lal v. California*, 746 F.3d 1112 (9th Cir. 2014), where qualified immunity was granted when officers used deadly force

against a suspect who was standing *one yard away*, and only after the suspect: led a high-speed chase; threw "several softball sized rocks at" the officers; walked towards them carrying a "football-sized rock over his head"; and received a warning from the officers that they would shoot. *Id.* at 1114–15, 1117. In further contrast to *Lal*, the trial evidence confirmed Ponder failed to warn Najera before deploying deadly force, which was also "significant" in *Hayes*, especially since "Hayes was still at least six feet away" from the deputies and it was therefore not shown that a warning "was unfeasible." *Hayes*, 736 F.3d at 1234–35. Here, the jury was instructed to consider "whether it was practical for the officer to give warning of the imminent use of force and whether such warning was given" in determining whether excessive force was used, and the jury unanimously found Ponder used excessive force.

Like in *Hayes*, 736 F.3d at 1234, the jury further could have concluded that Najera wielded the bat in a non-threatening manner, as no witness saw Najera swing, throw, or wind up the bat at anyone before Ponder shot him, and one witness affirmed Najera did not look like he was about to strike someone with the bat. Ponder himself acknowledged that he never saw Najera swing, throw, or even wind up to throw a bat at him or anyone else. These facts do not warrant deadly force under our precedent, as long before Ponder shot Najera "[i]t was specifically established that where an officer had reason to believe that a suspect was only holding a knife, not a gun, and the suspect was not charging the officer and had made no slicing or stabbing motions toward him, that it was unreasonable for the officer to use deadly force against the suspect." *Walker v. City of Orem*, 451 F.3d 1139, 1160 (9th Cir. 2006).

### 2. Threat to Others

Virtually no evidence suggested that Najera presented any threat to others at the time of the shooting. At that point, Najera was even further away from the bystanders than he was from Ponder. Because Najera did not pose an immediate threat to bystanders, the use of deadly force was not justified. *Garner*, 471 U.S. at 11; *Glenn v. Wash. Cnty.*, 673 F.3d 864, 878–80 (9th Cir. 2011) (reversing grant of summary judgment to officers on Fourth Amendment claim after they used deadly force against a suspect who was not in close proximity to bystanders at the time of shooting).

It is also clearly established law that a volatile situation does not, on its own, warrant deadly force. In *George v. Morris*, 736 F.3d 829 (9th Cir. 2013), we held that officers used excessive force when they shot a domestic violence suspect "without objective provocation" when the suspect's "gun [was] trained on the ground" even though the situation was "potentially volatile and dangerous." *Id.* at 832–33, 838–39. The unpredictability and danger posed by Najera, who held a bat-like object, was certainly no greater than that posed by the suspect with a gun in *Morris*, thus clearly establishing that Ponder's actions violated Najera's rights.

### C. Reasonable Mistake

Ponder attempts to narrow the basis for his Rule 50(b) motion by arguing that the motion turned on the question of "reasonable mistake" that did not reach the jury. Ponder posits that, even if he was mistaken as to the level of threat that Najera posed, that mistake was reasonable.

But the jury was explicitly instructed to evaluate the reasonableness of Ponder's use of force, including the reasonableness of a potential mistake, and the jury

definitively ruled against Ponder. The jury was told to evaluate the reasonableness of Ponder's use of force "from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight." It was instructed to consider "all of the circumstances known to the officer on the scene, including," *inter alia*: whether "Najera posed any threat to the officers or others," or "posed an immediate threat of death or of serious bodily injury to the officer or to others"; "whether [] Najera was actively resisting arrest or attempting to evade arrest by flight"; "the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary and any changing circumstances during that period"; "the type and amount of force used"; and "whether a reasonable officer would have or should have accurately perceived a mistaken fact." The jury considered Ponder's argument that any mistake was reasonable and roundly rejected it in delivering the verdict.

    Further, as discussed *supra*, Ponder's own statement the night of the shooting was that he "fired three times, and [] moved to the left" and that Najera "kind of turned, like, away from me momentarily." Ponder's police practices expert testified Ponder paused after the first volley of shots because he perceived Najera possibly turning away from him and thus believed he had ceased to be a threat. These statements, especially coupled with the two fatal shots to the back, are enough for the jury to have concluded that Ponder was not "reasonably mistaken" as to the level of threat Najera posed, but rather properly assessed that he was not an immediate threat—and fired anyway.

    We recognize that law enforcement must make quick decisions regarding threats and act in volatile situations. But they are also trained to make ongoing threat assessments and are on clear notice that deadly force is not permitted where

there is no immediate threat. Foundational cases like *Garner* have put this principle beyond debate, and our holdings in *Hayes*, *Walker*, and *Morris* provide even more texture. Shooting Najera in the back when he posed no immediate threat does not entitle Ponder to qualified immunity.

We affirm the district court's denial of qualified immunity to Ponder.

**AFFIRMED.**